# EXHIBIT 1



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NEM/NS
F. #2018R01519

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 3, 2018

By Hand

The Honorable Marilyn D. Go
United States Magistrate Judge
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Melvi Amador-Rios, et al.
          Criminal Court Case No. 18-398

Dear Judge Go:

On August 2, 2018, a grand jury in this District returned a sealed indictment charging the defendants, Melvi Amador-Rios, also known as "Letal" and "Pinky," Santos Amador-Rios, also known as "Rayo," Yan Carlos Ramirez, also known as "Demente," and Antonio Salvador, also known as "Pantro," with (1) conspiracy to commit murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5); (ii) attempted murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5); (iii) assault in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(3); and (iv) discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). If convicted of these crimes, the defendants face a mandatory ten-year sentence and a statutory maximum sentence of life in prison. The defendants are scheduled to be arraigned before the Court today.

The government respectfully submits this letter in support of its request for a permanent order of detention for all four defendants. There is a statutory presumption of detention, and the defendants should be detained as they each pose a risk of flight and are dangers to the community.

I.    Legal Standard

    A.    The Bail Reform Act

The Bail Reform Act empowers federal courts to order a defendant's detention pending trial where the government establishes by clear and convincing evidence that the

defendant is a danger to the community or, by a preponderance of the evidence, that he represents a risk of flight. See 18 U.S.C. § 3142(e); Ferranti, 66 F.3d at 542; United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). Where, as here, there is probable cause to believe that an individual committed an offense under 18 U.S.C. § 924(c), it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. See 18 U.S.C. § 3142(e)(3)(B). Where a presumption of detention is applicable, the defendant bears the burden of rebutting that presumption by coming forward with evidence "that contradicts notions of flight risk or dangerousness." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). A bail package sufficient to overcome a presumption of flight may not be enough to overcome a presumption of dangerousness. United States v. Rodriguez, 950 F.2d 85, 89 (2d Cir. 1991).

Moreover, it is well established that even if a defendant can meet his burden to rebut this presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight, the presumption favoring detention "does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Mercedes, 254 F.3d at 436; see also United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986) (presumption of risk of flight); Rodriguez, 950 F.2d at 88 (presumption of dangerousness).

In order to determine whether the presumptions of dangerousness and flight are rebutted, the district court is directed to consider the factors enumerated in 18 U.S.C. § 3142(g), specifically: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, community ties and past conduct; and (4) the nature and seriousness of the danger posed by the defendant's release.

B.    Elaborate Bail Packages Are Insufficient to Protect the Community Against Dangerous Defendants

The Second Circuit repeatedly has rejected "elaborate" bail packages for dangerous defendants. See Ferranti, 66 F.3d at 543-44 (rejecting $1 million bail package secured by real property); United States v. Orena, 986 F.2d 628, 630-33 (2d Cir. 1993) (rejecting $3 million bail package secured with real property, home detention, restricted visitation and telephone calls, and electronic monitoring); United States v. Colombo, 777 F.2d 96, 97, 100 (2d Cir. 1985) (rejecting $500,000 bail package secured by real property). The Second Circuit has viewed home detention and electronic monitoring as insufficient to protect the community against dangerous individuals. In United States v. Millan, the Second Circuit held that:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

4 F.3d 1039, 1048-49 (2d Cir. 1993) (citations and internal quotations omitted). See also Orena, 986 F.2d at 632 ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks and citations omitted).

Similarly, courts in this district have denied dangerous defendants bail in recognition of the Second Circuit's dim view of the effectiveness of home detention and electronic monitoring. See, e.g., United States v. Cantarella, 2002 WL 31946862, at *3-4 (E.D.N.Y. 2002) (Garaufis, J.) (adopting "principle" of "den[ying] bail to 'dangerous' defendants despite the availability of home detention and electronic surveillance and notwithstanding the value of a defendant's proposed bail package"); United States v. Agnello, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (Gershon, J.) ("[T]he protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility[.]"); United States v. Masotto, 811 F. Supp. 878, 884 (E.D.N.Y. 1993) (rejecting bail because "the Second Circuit appears to be saying to us that in the case of 'dangerous defendants' the Bail Reform Act does not contemplate the type of conditions suggested by this Court [including home confinement and electronic monitoring] and that, even if it did, the conditions would not protect the public or the community, given the ease with which many of them may be circumvented").

II.   Proffered Facts Regarding the Defendants' Crimes

The government proffers the following facts concerning the charges at issue and pretrial detention. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (the government is entitled to proceed by proffer in a detention hearing); United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995) (same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).

The defendants Melvi Amador-Rios, Santos Amador-Rios, Ramirez and Salvador are members of the violent transnational criminal organization La Mara Salvatrucha, also known as "MS-13." MS-13 operates through chapters, or "cliques," throughout the United States, which report and funnel money to a central leadership based in El Salvador. The enterprise, which is active in Queens and Long Island, engages in a range of racketeering activity, including murder, extortion, assault, robbery, narcotics trafficking and obstruction of justice. Gang membership is considered a lifetime commitment, with only rare exceptions that allow individuals to leave the gang. Clique members often carry out directives from regional, national and international MS-13 leaders, including orders to kill witnesses, rival gang members, and potential cooperating or defecting MS-13 members. MS-13 cliques assist each other in carrying out violent crimes, harboring fugitives, acquiring firearms, distributing narcotics and other criminal activity.

Melvi Amador-Rios is the leader of the Centrales Locos Salvatruchas ("CLS") clique of MS-13, of which co-defendants Santos Amador-Rios and Yan Carlos Ramirez are

also members.  Antonio Salvador is a member of the Fulton Locos Salvatruchas ("FLS") clique of MS-13.

The charges in this indictment arise from the attempted murder of a suspected 18th Street gang member on October 23, 2016.  On or about October 22, 2016, Melvi Amador-Rios, the leader of the CLS clique, directed a CLS "chequeo," or low-level MS-13 member, to kill a member of the rival 18th Street gang to maintain and increase his position in CLS.  Melvi Amador-Rios instructed the chequeo to obtain a firearm to carry out the murder from his brother Santos Amador-Rios.  Santos Amador-Rios provided the chequeo with a firearm to use for the murder.  After the chequeo received the firearm from Santos Amador-Rios, the chequeo enlisted the assistance of two other chequeos and the three of them went to Salvador's apartment, where Salvador and Ramirez were present.  At Salvador's apartment, the chequeo showed Salvador and Ramirez the firearm that he had obtained from Santos Amador-Rios and explained that he was going to use it to murder a rival gang member.  Among other things, Ramirez and Salvador provided advice to the three CLS chequeos regarding how to use the firearm and carry out the murder of a rival gang member.

Shortly thereafter, in the early morning of October 23, 2016, in the vicinity of 179th Street and 90th Avenue in Queens, New York, the three CLS chequeos confronted a suspected 18th Street gang member, beat the victim (a then-sixteen year old boy), shot him in the head once and attempted to shoot him a second time as he lay on the ground, but the firearm apparently malfunctioned.  Based on records obtained from a hospital that treated the victim, as a result of the gunshot wound, the victim was initially paralyzed from the neck down.  The victim is currently a paraplegic.[1]  Following the arrest of the chequeos for attempted murder, in a recorded prison call, Melvi Amador-Rios informed them that "you guys already have the pass, you know, to be homeboys, you know,"[2] indicating that the chequeos could now become full-fledged members of MS-13.

At trial, the government will establish the defendants' membership in MS-13 through, among other things, witness testimony, photographs of the defendants wearing the colors associated with MS-13 and making hand signs used by the gang, a selection of which is attached hereto as Exhibit A, and other independent evidence.  As is visible in the photographs, Salvador has "MS 13" tattooed on his chest and "FLS" tattooed on his stomach.  The evidence will show that the latter tattoo stands for "Fulton Locos Salvatruchas," the name of the clique to which Salvador belongs.  Photographs of Santos Amador-Rios show that he has "Centrales"

---

[1]     The three chequeos have each pleaded guilty to federal crimes for their participation in the assault and attempted murder of the victim, including assault in-aid-of racketeering, attempted murder in-aid-of racketeering and discharging a firearm in furtherance of a crime of violence.

[2]     This quotation is based on a draft translation and transcript that is not final and subject to revision.

tattooed on his forearm.  The evidence will show that Centrales Locos Salvatruchas is the name of the clique to which Santos Amador-Rios belongs.[3]

The proof in the case includes (1) testimony of eyewitnesses and cooperating witnesses; (2) cell-site data and phone records; (3) surveillance footage that captures the attack; (4) photographs, videos and other materials recovered from the Facebook pages of the defendants and their coconspirators, which further establishes the defendants' membership in MS-13; and (5) audio recordings and other evidence.

III.  Argument

Here, all four Bail Reform Act factors counsel strongly in favor of detention. First, as set forth above, the nature and circumstances of the crimes charged are extremely and self-evidently serious, as they involve attempted murder where the victim was shot in the head with a firearm and is now a paraplegic.  Indeed, but for an apparent malfunction of the firearm, the victim would have been killed.  The defendants face a mandatory ten-year sentence and a statutory maximum sentence of life in prison.  Melvi Amador-Rios and Salvador face an advisory Guidelines range of 355 – 413 months' imprisonment and Santos Amador-Rios and Ramirez face and an advisory Guidelines range of 330 – 382 months' imprisonment.[4]  These penalties give the defendants an overwhelming incentive to flee (as well as to obstruct justice).

---

[3]     The photographs in Exhibit A show (1) Yan Carlos Ramirez displaying an MS-13 gang sign; (2) a group of MS-13 members, including Antonio Salvador (second from the right on the bottom row) and Melvi Amador-Rios (third from the right on the bottom row), displaying MS-13 gang signs; (3) Antonio Salvador displaying an MS-13 gang sign in front of an MS-13 mural; (4) Antonio Salvador's tattoos, including "MS 13" and "FLS" tattoos; (5) Santos Amador-Rios displaying an MS-13 gang sign and his "Centrales" tattoo; (6) Santos Amador-Rios and other MS-13 members displaying an MS-13 gang sign; (7) Santos Amador-Rios displaying an MS-13 gang sign; and (8) Santos Amador-Rios and another MS-13 gang member displaying MS-13 colors and gang signs.

[4]     Under United States Sentencing Guideline Section 2A2.1 the base offense level for attempted murder where the object of the offense would have constituted first degree murder is 33.  Because the victim suffered permanent or life-threatening bodily injury as a result of the attempted murder, 4 levels are added for total offense level of 37.  Assuming that Santos Amador-Rios and Yan Carlos Ramirez fall within Criminal History Category I, this results in range of imprisonment of 210 – 262 months.  However, because a conviction under Title 18, United States Code, Section 924(c)(1)(A)(iii) requires a mandatory minimum of 120 months that must be imposed consecutively, the applicable Guidelines range is 330 – 382 months' imprisonment.  Assuming that Melvi Amador-Rios and Antonio Salvador fall within Criminal History Category II, this results in a range of imprisonment of 235 – 293 months' imprisonment.  However, because a conviction under Title 18, United States Code, Section 924(c)(1)(A)(iii) requires a mandatory minimum of 120 months that must be imposed consecutively, the applicable Guidelines range is 355 – 413 months' imprisonment.

See United States v. Dodge, 846 F. Supp. 181, 184 85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).  The nature of the offense, and their membership in MS-13, also indicates that the defendants have no qualms about participating in killing those whose interests are contrary to their own; if allowed to remain at liberty, they can be expected to attempt to intimidate, harm or murder those believed to be witnesses in the government's case.  See 18 U.S.C. § 3142(f)(2); United States v. Madoff, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (preponderance of the evidence standard applies to determination of both risk of flight and risk of obstruction of justice).

Second, as outlined above, the government's evidence in this case is strong and consists of, among other things, cell-site data, cooperating witness testimony, audio recordings and surveillance footage.

Third, the defendants are members of MS-13, a violent transnational criminal enterprise whose members and associates have previously been convicted in this District of murder, obstruction of justice, assault and a number of other violent crimes.  The defendants' membership in, and association with, the gang is significant not only because it demonstrates their proclivity for violence, but because it provides them with access to a network of MS-13 chapters throughout the United States and in El Salvador willing to harbor and assist them should they decide to flee or obstruct justice.  Indeed, as the facts of this case demonstrate, as the leader of the CLS clique, Melvi Amador-Rios readily has the ability to direct other members of CLS to commit acts of violence at his behest.  Ramirez and Salvador represent particular flight risks as a bench warrant was issued for Ramirez's arrest in 2016[5] and Salvador, a citizen of El Salvador, has no legal status in this country.  As Salvador is subject to deportation, he has every incentive to flee.  Moreover, four orders of protection have been issued against Salvador, which further establishes that he poses a danger to the community.  See United States v. Mercedes, 254 F.3d 433, 437-38 (2d Cir. 2001) ("A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others.") (internal citations and quotation marks omitted).

Finally, as noted, the circumstances of the charged crimes and the defendants' membership in MS-13 clearly demonstrate that the defendants would pose a significant danger to the community and the witnesses against them if released.  See 18 U.S.C. § 3142(f)(2); Madoff, 586 F. Supp. 2d at 247.

---

[5]       In January 2016 Ramirez was arrested and charged with Criminal Possession of a Controlled Substance in the Third Degree – Narcotic Drug Intent to Sell; Criminal Possession of a Controlled Substance – Narcotic; Criminal Possession of a Controlled Substance in the Fifth Degree – Intent to Sell; Act in Manner to Injure Child less than 17; Criminal Possession of a Weapon in the Fourth Degree' Criminal Use of Drug Paraphernalia in the Second Degree—Package; Criminal Possession of Marihuana in the Fifth Degree – Public Place and General Violation of Local Law.  In August 2016, Ramirez pleaded guilty to disorderly conduct and was sentenced to a conditional discharge and a $150 fine.

IV.      Conclusion

For the foregoing reasons, the government respectfully requests that the Court enter a permanent orders of detention with respect to the defendants Melvi Amador-Rios, Santos Amador-Rios, Yan Carlos Ramirez and Antonio Salvador.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:      ____/s/_____
Nadia E. Moore
Nadia I. Shihata
Assistant U.S. Attorneys
(718) 254-7000

cc:      Defense counsel (By Hand)

# EXHIBIT A



001



002





004

005



006





# EXHIBIT 2



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NS:NEM                                          *271 Cadman Plaza East*
F. #2018R01519                                  *Brooklyn, New York 11201*

September 12, 2019

By Email and ECF

The Honorable Roslynn R. Mauskopf
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Melvi Amador-Rios, et al.
       Criminal Docket No. 18-398 (S-3) (RRM)

Dear Judge Mauskopf:

The government respectfully writes to advise the Court that on September 12, 2019, a grand jury sitting in this district returned an eighteen-count third superseding indictment in the above-captioned case.  The superseding indictment removes references to a defendant who previously pleaded guilty, adds new defendant Luis Rivas to the case and includes the following changes:

- Defendants Josue Leiva and Luis Rivas have been added to Count One, which charges racketeering.

- Racketeering acts charging (1) a January 8, 2017 robbery, (2) the conspiracy to murder John Doe 2, (3) the conspiracy to murder John Doe 3 and (4) the conspiracy to murder Julio Vasquez and the murder of Julio Vasquez have been added.

- Racketeering Acts Two through Four of the underlying indictment have been renumbered as Racketeering Acts Six through Eight.

- Defendants Leiva and Rivas have been added to Count Two, which charges a violation of 18 U.S.C. § 924(c).

- Counts Seven and Eight, charging Melvi Amador-Rios and Rivas with Hobbs Act robbery and brandishing firearms during a crime of violence, have been added.

- Count Nine, charging Amador-Rios with conspiracy to murder John Doe 2, has been added.

- Count Ten, charging Amador-Rios with conspiracy to murder John Doe 3, has been added.

- Counts Eleven and Twelve, charging Amador-Rios, Leiva and Rivas with conspiracy to murder Julio Vasquez and the murder of Julio Vasquez, have been added.

- Counts Seven through Twelve of the underlying indictment have been renumbered as Counts Thirteen through Eighteen.

No new charges have been filed against defendant Antonio Salvador.

The new charges relate to additional crimes of violence committed by certain defendants in 2017. As previously stated in the government's August 3, 2018 detention memorandum, during the relevant time period, the defendant Melvi Amador-Rios was the leader of the Centrales Locos Salvatruchas ("CLS") clique of MS-13, which was based in and around Jamaica, Queens. Racketeering Act Two alleges and Counts Seven and Eight charge, Amador-Rios and Rivas with Hobbs Act robbery and brandishing a firearm for robbing a money transfer business at gunpoint. The store's employee was pistol-whipped during the robbery and required numerous stiches to treat her laceration.

Racketeering Acts Three through Five and Counts Nine through Twelve relate to the conspiracies to murder Julio Vasquez and the individuals referred to in the indictment as John Doe 2 and John Doe 3 and the May 16, 2017 murder of Julio Vasquez. By way of background, at trial the government expects to prove that John Doe 2 was a chequeo, or low-level CLS member. Believing that John Doe 2 was associating with a rival gang, Amador-Rios ordered that he be killed. After the clique was unable to find John Doe 2 to carry out Amador-Rios' order, they suspected that John Doe 3, another CLS chequeo, had warned John Doe 2 that the clique intended to kill him. Amador-Rios then ordered that John Doe 3 be murdered. Julio Vasquez, another CLS chequeo, was ordered to kill John Doe 3. After Vasquez failed to do so, and because the clique suspected that Vasquez was cooperating with law enforcement, Amador-Rios ordered that Vasquez be killed. On May 16, 2017, Vasquez was lured to Alley Pond Park in Queens, New York, where Josue Leiva and Luis Rivas stabbed him numerous times, killing him. Vasquez was 16 years old at the time of his death. Vasquez's body was recovered on May 21, 2017.

Rivas is currently awaiting sentencing in <u>United States v. Luis Rivas</u>, 19-CR-69 (PKC).  The government respectfully requests that Rivas' counsel in that matter be appointed to represent him in the above-captioned case and that the defendants be arraigned on the superseding indictment at the next Court appearance scheduled for September 25, 2019.

Respectfully submitted,
RICHARD P. DONOGHUE
United States Attorney

By:      Nadia E. Moore
Nadia E. Moore
Assistant U.S. Attorney
(718) 254-6362


cc:      All Defense Counsel (By ECF)
David Gordon, Esq., counsel to Rivas in <u>Rivas</u>, 19-CR-69 (PKC) (by email)

3