UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA

        - against -                                                 **ORDER**
                                                           18-CR-398 (S-3) (RRM)

MELVI AMADOR-RIOS,

                Defendant.
----------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Defendant Melvi Amador-Rios seeks release from custody on proposed conditions, claiming that discovery has revealed that the charges are supported solely by the testimony of cooperating witnesses, including the actual perpetrators of the crimes charged, and citing generally, the COVID-19 pandemic and Amador-Rios' recent treatment for a "stomach ailment since his incarceration, resulting in at least two trips to the hospital." For the reasons set forth below, defendant's motion is denied.

      The defendant is charged in a third superseding indictment with racketeering, two counts of discharging a firearm during a crime of violence, four counts of brandishing a firearm during a crime of violence, murder in-aid-of racketeering, four counts of conspiracy to commit murder in-aid-of racketeering, assault in-aid-of racketeering, attempted murder in-aid- of racketeering and four counts of Hobbs Act robbery. The murder in-aid-of racketeering charge is punishable by a mandatory life sentence or death.[1]

---

[1] The other crimes charged against the defendant also carry significant sentencing exposure: the racketeering count carries a maximum sentence of life, 18 U.S.C. § 1963(a); discharging a firearm during a crime of violence carries a mandatory minimum of ten years' imprisonment and a maximum penalty of life imprisonment, 18 U.S.C. § 924(c)(1)(A)(iii); brandishing a firearm during a crime of violence carries a mandatory minimum of seven years' imprisonment and a maximum penalty of life imprisonment, 18 U.S.C. § 924(c)(1)(A)(ii); conspiracy to commit murder in-aid-of racketeering and attempted murder in-aid-of racketeering carry a maximum penalty of ten years' imprisonment, 18 U.S.C. § 1959(a)(5); assault in aid-of-racketeering carries a maximum penalty of twenty years' imprisonment, U.S.C. § 1959(a)(3) and Hobbs Act robbery carries a maximum penalty of twenty years'

The charges arise from the defendant's membership and leadership role in the violent transnational criminal organization La Mara Salvatrucha, also known as "MS-13." The defendant was the leader of the Centrales Locos Salvatruchas ("CLS") clique of MS-13 in Queens, New York. Because he is charged with brandishing and discharging firearms during crimes of violence, it shall be presumed that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(B). Where a presumption of detention is applicable, the defendant bears the burden of rebutting that presumption by coming forward with evidence "that contradicts notions of flight risk or dangerousness." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). A bail package sufficient to overcome a presumption of flight may not be enough to overcome a presumption of dangerousness. *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991).

In order to determine whether the presumptions of dangerousness and flight are rebutted, the district court is directed to consider the factors enumerated in 18 U.S.C. § 3142(g), specifically: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, community ties and past conduct; and (4) the nature and seriousness of the danger posed by the defendant's release. Here, all four factors weigh counsel in favor of detention, and defendant has not and cannot rebut the presumption that he both a flight risk and a danger to the community.

---

imprisonment, 18 U.S.C. § 1951(a). In total, the defendant faces a mandatory minimum sentence of life plus thirty-eight-years' imprisonment and a statutory maximum sentence of eight life sentences, one of which is mandatory and could result in a death sentence, and an additional sentence of 150 years in prison.

The charges, as detailed in the government's opposition, roundly support the conclusion that defendant is both a flight risk and a danger to the community. As alleged, defendant's crimes are particularly heinous, and include the attempted murder of a 16-year-old left paralyzed and numerous other violent acts, all carried out in connection with defendant's leadership role in a violent gang. As detailed above, defendant is facing a mandatory life sentence or death, and other significant penalties, for his alleged conduct. *United States v. Dodge*, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight). Given the nature of these charges, and defendant's belief as stated in this motion that the evidence against him consists solely of others involved in his criminal conduct, there is a preponderance of the evidence to find serious risk that defendant will attempt to intimidate or harm those believed to be witnesses were defendant to be released. *See* 18 U.S.C. § 3142(f)(2)(B) (a court may order detention if there is "a serious risk that the [defendant] will… attempt to obstruct justice, or … threaten, injure, or intimidate, a prospective witness or juror.") Moreover, defendant has a significant criminal history, including revocation of release, and has a weapons charge currently pending in state court. Were he to be released, there is grave concern that defendant will resume his activity on behalf of MS-13 and endanger the community as he has for so many years. For these reasons, the Court finds that there is no condition or combination of conditions that can reasonably assure defendant's future appearance or the safety of the community.

Defendant claims there are two new circumstances that warrant his release. First, he challenges the strength of the evidence against him based on a review of discovery to date. However, as the government outlines, the evidence against defendant appears strong, and is not solely limited to "the testimony of cooperating witnesses including, it would appear, one or

more of the actual perpetrators." As the government notes, the available evidence to date includes the testimony of eyewitnesses and cooperators; cell-site data and phone records; surveillance video that captures some of the crimes; evidence of the defendant's membership in MS-13; and a recorded prison phone call corroborating his coconspirator's involvement in the attempted murder of the 16-year-old. The strength of the evidence in no way mitigates the Court's concerns regarding defendant's dangerousness and risk of flight.

Second, defendant claims that he is in "imminent danger" from his continued incarceration during the COVID-19 pandemic. His attorneys assert:

> Mr. Amador-Rios has been suffering from a stomach ailment since his incarceration, resulting in at least two trips to the hospital. He has been gold that surgery is necessary, but does not know if or when that surgery will take place. This we contend puts Mr. Amador Rios at greater risk of contracting the coronavirus and at greater risk of a bad outcome should he contract the virus.

Defendant's claim is without merit. First, defendant is 29 years old, and is not named on the list of MDC inmates that are in the known risk categories for COVID-19 established by the Centers for Disease Control. Defendant does not indicate how his unspecified "stomach ailment" puts him at greater risk to contract the virus. The medical affidavits submitted in support of defendant's motion carry little weight. Neither discuss how an unspecified stomach issue heightens one's risk of contracting COVID-19. Moreover, Dr. Giftos's affidavit focuses on inmates that fall in the CDC's "high risk" categories, which does not include defendant. And Dr. Williams specifically submitted her affidavit "in support of any defendant seeking release from custody during the COVID-19 pandemic, *so long as such release does not jeopardize public safety*." (Emphasis added.) Here, as noted above, defendant's release would pose serious risk to public safety. Both affidavits opine of the harms that *could* arise if a virus were allowed to spiral out of control within

a prison setting generally. But neither takes into account the *actual* conditions at MDC, or the *actual* steps that the Federal Bureau of Prisons has taken both nationally and locally to mitigate the spread of COVID-19 within all of its facilities, and specifically, within the MDC where Amador-Rios is housed.

The government details those measures at length. They include suspension of all social and legal visits for 30 days; restrictions on inmate movement; screening and testing of inmates and staff; enhanced sanitation; and other modifications to operations. In addition, the Court has ordered bi-weekly reports from the MDC in order to more effectively monitor conditions at the facility. As of April 9, three inmates and nine staff members at the MDC have tested positive for the virus. There is nothing to suggest that the parade of horribles that Drs. Giftos and Williams speculate might happen is actually happening or is imminent at MDC. To the contrary, there is nothing to suggest that the Bureau of Prisons will be unable to mitigate or manage the effects of COVID-19, or will be unable to handle the medical needs of any inmate at MDC, including Amador-Rios.

Accordingly, the defendant's motion for a bail hearing and an order granting his release is denied.

SO ORDERED.

Dated: Brooklyn, New York　　　　　*Roslynn R. Mauskopf*
　　　　April 12, 2020

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　ROSLYNN R. MAUSKOPF
　　　　　　　　　　　　　　　　　　Chief United States District Judge

5